

**ORDERED in the Southern District of Florida on April 17, 2008.**

                                          **Laurel M. Isicoff, Judge**
                                          **United States Bankruptcy Court**

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                              CASE NO. 07-14797-BKC-LMI

GEORGE WALKER,
                                                Chapter 13

       Debtor.
_____/

**MEMORANDUM OPINION ON DEBTOR'S EMERGENCY MOTION FOR SECOND AMENDED ORDER GRANTING MOTION TO SELL PROPERTY**

      This matter came before me on March 10, 2008 on the Debtor's Emergency Motion for Second Amended Order Granting Motion to Sell Property (CP #203).  The Motion seeks amendment of the prior Order Granting Motion to Sell Property to authorize sale of a townhouse owned by Debtor located at 3718 N.W. 213th Street, Miami, Florida (the "Townhouse") free and clear of the approval fee and process required by Miramar Gardens Townhouse Homeowner's Association (the "HOA").  Having considered the arguments of the Debtor and counsel for the HOA, and having considered the Memorandum of Law (CP #212) filed by the HOA in opposition to the Emergency Motion, on March 12, 2008 I entered an Order Granting the Emergency Motion (CP #220) and advised that this memorandum opinion would follow.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Debtor and the HOA have been in litigation regarding the assessment of fees owed to the HOA since the time the Debtor purchased the Townhouse in 2004. The HOA filed a claim in this bankruptcy case, seeking unpaid assessments and associated attorney fees arising from pre-petition litigation to foreclose liens on the Townhouse arising from the unpaid assessments. The Debtor objected to the claim, arguing, among other things, that the HOA was extinguished in 2006 when it failed to re-record its Declaration of Covenants and Restrictions and Bylaws ("Declaration of Covenants"), as required by the Florida Marketable Record Title Act. That dispute has not yet been resolved.

The Debtor filed a Motion to Sell (CP #24), which he later amended (CP #37), seeking to sell the Townhouse free and clear of all liens, claims and interests, with any such liens, etc. to attach to the proceeds of sale. Only the Chapter 13 Trustee filed an objection to the Debtor's original motion to sell; the HOA did not file any objection.[1] The Chapter 13 Trustee's objection was resolved by an order segregating $25,000 from the proceeds of sale to satisfy any lien claims to which the HOA and any other lien claimant might ultimately be entitled.

The Debtor entered into a contract with his son to sell the Townhouse. Either the HOA, or the attorney preparing the title insurance for the purchaser's lender, apparently advised the Debtor that the sale of the Townhouse was subject to the prior approval of the HOA. In response to this information the Debtor filed the Emergency Motion. I granted the Emergency Motion over the objection of the HOA. However, the Debtor was apparently advised by a closing

---

[1] The Debtor argues that the HOA's failure to object to the Motion to Sell constituted a waiver of its right to enforce the Approval Bylaws (hereinafter defined). In light of my ruling I do not need to address the waiver issue.

- 2 -

attorney that I might not have jurisdiction to grant the relief requested; consequently, the Debtor was unable to sell the Townhouse, but still hopes to do so.

## THE HOA APPROVAL PROCESS

The HOA asserts its right to approve the sale of any real property subject to its jurisdiction[2] derives from bylaws that it amended on September 2, 2005. Those bylaws include the following requirements if a homeowner wishes to sell property within the HOA.

> In an effort to provide a community of congenial residents and thus protect the value of the units, the sale, leasing, rental and transfer of units by any Owner, other than the Declarant, shall be subject to the following provisions:
>
> 1. SALE. No unit owner may dispose of any unit or any interest in a unit by sale without the prior written approval of the Association. A unit owner intending to make a bona fide sale of his unit or any interest in it shall give to the Association notice of such intention, together with the name and address of the intended purchaser, a fully executed copy of the complete proposed sales contract, along with any and all addenda, a completed application for sale and purchase (provided by the Association), a screening fee in the amount provided herein and such other information concerning the intended purchaser as the Association may reasonably require, including but not limited to, federal and state tax documentation, payroll documentation, investment documentation and other income and financial documentation. As part of this notice, the intended purchaser must schedule a personal interview with the Board of Directors or a background investigation including, but not limited to, criminal history, credit and financial history, prior residential history and civil litigation history. In the event the prospective purchaser moves in without the prior written permission of the Association, the purchase application shall be deemed automatically withdrawn and the Association shall take all necessary legal acts terminating this unauthorized occupancy, and in such event, the prospective purchaser and the unit owner shall be jointly and severally liable for the court costs and attorneys' fees, through the appellate level, whether suit be brought or not.
>
> 2. The Association shall neither have the duty to provide an alternate purchaser or owner, nor shall it assume any responsibility for the denial of a sale or owner application, if the denial is based upon, including but not limited to, any of the following factors:

---

[2] For purposes of this memorandum opinion, I assume the HOA's rights under its documents were not extinguished, since I have not yet resolved that issue in the claim objection proceeding. The Debtor has also questioned whether the HOA complied with its own procedures when promulgating the by-laws subject of this Memorandum Opinion.

(a). The person seeking approval (which shall include all proposed occupants) has been convicted of a felony involving violence to persons or theft or destruction of property: a felony demonstrating dishonesty or moral turpitude; any criminal offense involving illegal drugs or any criminal offense involving sexual battery, sexual abuse, or lewd and lascivious behavior.

(b). The sale, ownership, or the application for approval, on its face, or the conduct of the applicant (including all proposed occupants), indicates that the person seeking approval intends to conduct himself in a manner inconsistent with the Associations documents, or that the sale, or ownership, if approved would result in a violation of the Associations [sic] documents;

(c) The person seeking approval (including all proposed occupants) has a history of disruptive behavior or disregard for the rights and property of others as evidenced by his criminal history, conduct in other residences, social organizations or associations, or by his conduct in this community as an occupant of a unit.

(d) The person seeking approval (including all proposed occupants) has failed to provide the information required to process the application in a timely manner, has materially misrepresented any fact or information provided in the application or screening process; has failed to pay the transfer / approval fee or assessment escrow deposit or payment has been dishonored; has failed to make an appointment for or attend the personal screening; or has not agreed, failed to provide or refused to release to the Association the background investigation;

(e) The person seeking to sell or own the unit is delinquent in the payment of any assessments or other sums owed to the Association;

(f) The person seeking approval (including all proposed occupants) is financially unable to meet the obligations that are incumbent upon an Owner in the Association; the purchase of the unit is beyond the financial ability of the person seeking approval; or inquiry into the financial responsibility of the person seeking approval indicates an inability to afford the mortgage, maintenance assessment and other unit obligations and other financial obligations not related to the unit.

Notice. Any event transferring ownership or possession of a unit which shall occur without the required prior notice having been given to the association shall be void ab initio.  The Association shall take any and all legal acts as may be necessary to terminate such prohibited transfer of ownership or possession.  The Association shall recover its court costs and its reasonable attorney's fees from

>  the owner and/or possessor of the unit through all appellate levels whether suit be brought or not.

I will refer to this provision hereinafter as the "Approval Bylaws."

The HOA concedes that there is nothing in the Declaration of Covenants that addresses the HOA's authority to condition the sale of property on its prior approval. However, citing *Highland Lakes Property Owners Ass'n v. Schlack*, 724 So. 2d 621, 622 (Fla. 5th DCA 1998) ("*Shlack*"), the HOA argues that the very absence of any restriction of such a screening and approval process, together with the absence of any prohibition of screening and approval in chapter 720 of the Florida Statutes, legitimizes the Approval Bylaws.

Chapter 720 of the Florida Statutes governs homeowner associations. Chapter 720 includes a section entitled "Prohibited Clauses in Association Documents," which section does not include any prohibition against provisions in a homeowner association's documents for screening and approving the sale or transfer of homes subject to those association documents. However, Chapter 720 also does not include any language authorizing any such provision. In contrast, section 718.104(5) of the Florida Statutes, which governs condominium associations, specifically provides that the declaration of a condominium association "may include covenants and restrictions concerning the use, occupancy, and transfer of the units permitted by law with reference to real property." Based on Florida law regarding restraints on alienation, the fact that the Florida legislature specifically authorized condominium associations to include such restrictions in their declarations, and specifically did not include such authority for homeowner associations could be interpreted to prohibit such provisions in homeowner association documents. *See Moonlit Waters Apartments, Inc. v. Cauley*, 666 So.2d 898, 900 (Fla. 1996) ("Under the principle of statutory construction, *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of another.") However, even if this language omission is not

significant, Florida law nonetheless places limits on any efforts to compromise a fee owner's right in his or her property.

The HOA claims it can promulgate any bylaws not specifically prohibited by the Declaration of Covenants or by law.  The Debtor argues that the HOA cannot take any action that is not authorized by the Declaration of Covenants, citing *S&T Anchorage, Inc. v. Lewis*, 575 So.2d 696 (Fla. 3d DCA 1991).  In *Schlack*, relied upon by the HOA, the declaration at issue actually did authorize the purchase of property such as was the subject of the dispute in the case.  The bylaws clarified and more clearly defined the right to purchase, but the bylaws were not the source of the right to purchase at issue.  Conversely, in the *S&T Anchorage* case, the association relied on a power to sell in the bylaws, which power did not exist in the applicable declaration.  Thus, in the *S&T Anchorage* case, the court declared invalid the association's attempt to sell certain property.  Similarly, in the instant case, there is nothing in the Declaration of Covenants that suggests, even indirectly, that the HOA has the right to impose any restrictions on the sale of property.[3]  However, even if such authority is not expressly required, the Approval Bylaws are nonetheless void.

The Approval Bylaws clearly constitute a restraint on alienation as they seek to restrict a homeowner's right to sell his property.  Absolute restrictions on a homeowner's right to sell are unenforceable and against public policy.  *Davis v. Geyer*,  9 So.2d 727, 151 Fla. 362 (Fla. 1942) (affirming lower court's ruling declaring void a deed restriction requiring a prior owner's right to consent to sale of the property by the person who currently owned the property).  However, as Florida law has developed, the courts will enforce restraints on alienation that are reasonable,

---

[3] In fact, one condition of the Approval Bylaws is that the owner be current in all HOA fees.  The Declaration of Covenants specifically provides that an owner who is not current cannot vote at HOA meetings.  Nowhere does the Declaration of Covenants suggest that a permissible additional consequence of failure to pay is the inability to sell one's property.

- 6 -

especially when a condominium association is involved, since the Florida statute has authorized limited restrictions.  *See Seagate Condo. Ass'n, Inc. v. Duffy,* 330 So.2d 484 (Fla. 4th DCA 1976).  Indeed, one court has held the restraint can be somewhat unreasonable so long as the restrainer is obligated "to purchase the property at the then fair market value[.]" *Aquarian Found., Inc. v. Sholom House, Inc.*, 448 So.2d 1166, 1168 (Fla. 3d DCA 1984).

"When determining the validity of restraints on alienation, courts must measure such restraints in terms of their duration, type of alienation precluded, or the size of the class precluded from taking."  *Camino Gardens Ass'n, Inc. v. McKim*, 612 So.2d 636, 639 (Fla. 4th DCA 1993). *See also Metro. Dade County v. Sunlink Corp.,* 642 So.2d 551 (Fla. 3d DCA 1992); *Seagate Condo. Ass'n, Inc. v. Duffy*, 330 So.2d 484.  The duration of the Approval Bylaws is perpetual, and impacts all homeowners, thus the term and size of class are each very broad.  All sales are prohibited unless the proposed purchaser provides detailed financial documents, a personal interview with the Board, and possibly a background investigation.  Moreover, the Approval Bylaws specifically provide the HOA will have no liability for denying approval of any buyer, including those whose offenses range from felony offenses, apparent possible intent to conduct him or herself inconsistent with association documents, whatever that means, a history of "disruptive behavior or disregard for the rights and property of others," as well as a variety of financial issues.  There is no limit or condition imposed on the HOA's right to void a sale.  Thus, even if the *Aquarian Foundation* "buy back" clause could save this otherwise unfettered discretion, the Approval Bylaws specifically provide the HOA has no such buy back obligation.

There is nothing reasonable about the conditions for screening and approval in the Approval Bylaws.  The HOA has the right to reject a buyer for even the most amorphous of

reasons, thereby creating what is an arbitrary standard for review. Thus, even if the HOA has a continuing right to assert authority as an HOA, which right, as I noted previously, is subject to question, it does not have the right to promulgate or enforce the Approval Bylaws, since the conditions for approval are contrary to the laws of the State of Florida.

## JURISDICTION

The HOA did not dispute, and has not disputed, my jurisdiction to enter an order authorizing the sale of the Townhouse free and clear of the Approval Bylaws.  Moreover, there is no question that I did have jurisdiction to have entered my Order granting the Emergency Motion.  The Townhouse is clearly property of the estate.  A bankruptcy court has original jurisdiction over all core proceedings.  Pursuant to 28 U.S.C. §157(b)(2) core proceedings include "(N) orders approving the sale of property … [and] (O) other proceedings affecting the liquidation of the assets of the estate …."  Any position to the contrary is wrong.

The Debtor has also stated, in a later filed pleading, that following entry of my Order granting the Emergency Motion, the HOA refused to provide a letter waiving the Approval Bylaws.  If, in fact, the HOA has taken any position contrary to my Order, an order that the HOA chose not to appeal, the HOA would be in contempt and I would have to proceed accordingly. Presumably there has been some confusion but if the HOA is acting inconsistent with my Order, I direct the Debtor to file a motion immediately so that I may address this issue as soon as possible.

## CONCLUSION

This Memorandum Opinion constitutes my findings of fact and conclusions of law entered in accordance with Federal Rule of Bankruptcy Procedure 7052, in support of my Order Granting Second Amended Motion to Sell Property.

# # #

Copies furnished to:
Emmanuel Perez, Esq.
George Walker, Debtor